**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HST HOLDINGS, LLC, a Delaware Limited Liability Company and MICHAEL DENNIS,<br><br>*Plaintiffs,*<br><br>v.<br><br>SAMUEL HWANG, GEORGE MARTIN, DOC DOE, JOHN DOES 1 – 3, and XYZ CORP. 1 – 3,<br><br>*Defendants.* | Civil Action No. 26-01178 (KSH) (AME)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

In a verified complaint (D.E. 1, "Compl."), plaintiffs Michael Dennis and HST Holdings, LLC, allege that defendants carried out a coordinated scheme to seize operational and managerial control of HST Holdings from Dennis by hacking into the business's computer system, locking him out of company and personal accounts, impersonating him in business communications and transactions, and diverting business to a newly formed, competing entity, HST Advisory Group Corporation.

Specifically, plaintiffs allege 16 counts: unfair competition and false designation of origin, pursuant to 15 U.S.C. § 1125(a) (Count One); dilution by blurring and tarnishment pursuant to 15 U.S.C. § 1125(c) (Count Two); unfair competition pursuant to N.J.S.A. § 56:4-1 and New Jersey common law (Count Three); trademark and tradename infringement pursuant to New Jersey common law (Count Four); breach of contract (Count Five); breach of fiduciary duty (Count Six); breach of the implied covenant of good faith and fair dealing (Count Seven); unjust

enrichment (Count Eight); violation of the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* (Count Ten); unlawful interception of wire, oral, or electronic communications pursuant to 18 U.S.C. § 2511 (Count Eleven); violation of the New Jersey Computer Related Offenses Act, N.J.S.A. § 2A:38A-1 *et seq.* (Count Twelve); identity theft pursuant to N.J.S.A. § 2C:21-17 (Count Thirteen); tortious interference (Count Fourteen); violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count Fifteen); and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count Sixteen). Plaintiffs also seek judicial dissolution of HST Holdings, LLC pursuant to N.J.S.A. § 42:2C-48 (Count Nine).

Individual defendants Samuel Hwang and George Martin have filed a motion to dismiss pursuant to Rules 12(b)(1), 12(b)(6), 12(b)(7), and 23.1. (D.E. 39.) The motion is fully briefed, and the Court decides it without oral argument. For the reasons stated in this opinion, the Court dismisses Count Nine without prejudice and denies defendants' motion as to all other counts.

## II. Factual Background

The complaint alleges as follows. HST Holdings is a Delaware limited liability company that "provides broad-based support to utility companies in the tristate region." (Compl. ¶ 2.) Dennis formed the entity on or about October 14, 2021, reserving for himself a 51% membership interest and providing Hwang the remaining 49%. (*Id.* ¶ 13.) HST named Martin chairman but did not grant him an ownership interest. (*Id.* ¶ 14.) Dennis and Hwang executed an operating agreement on October 22, 2022. (*Id.* ¶ 15.)

To establish HST after its formation, Dennis provided the company with loans and capital contributions such as cash and vehicles, and personally guaranteed portions of the company's debt; Hwang and Martin made no such contributions. (*Id.* ¶ 16.) Dennis also leveraged his experience working with utility companies to secure contracts for HST, managed the company's

day-to-day operations, and took the lead in marketing and networking for the company. (*Id.* ¶¶ 21–23.)

At the end of 2023, HST began paying Hwang a salary, but this stopped two years later, on or about December 15, 2025.[1] (*Id.* ¶ 17.) Also, either in July or December of 2025, HST terminated Martin as chairman.[2] (*Id.* ¶¶ 19, 126.)

The events underlying this lawsuit occurred in early 2026. On January 9, Dennis stopped receiving company emails and a notice was sent to his personal inbox that a United Airlines flight he had scheduled for HST business had been cancelled. (*Id.* ¶¶ 27–28.) When he investigated the irregularities, Dennis learned that the password for his personal United Airlines account had changed without his knowledge. (*Id.* ¶ 28.) Soon afterwards, Dennis discovered that access to the HST account at PNC Bank had been disabled because of fraudulent activity. (*Id.* ¶ 30.) Next, Dennis contacted Global Data Services ("GDS"), the host of HST's email accounts, and learned that somebody with access to the system had disabled all HST's email addresses and removed administrative credentials. (*Id.* ¶¶ 26, 33.)

Working with GDS, Dennis learned that Hwang and others were responsible for disabling HST's system. (*Id.* ¶ 36.) Dennis also retrieved emails in the HST system sent on January 9 and 10 from his address to HST vendors, employees, partners, and clients announcing that he was no longer affiliated with HST and no longer authorized to act on the company's behalf. (*Id.* ¶¶ 37–

---

[1] The complaint says only that "HST decided to begin providing Hwang a salary of $10,000.00," without any elaboration as to salary frequency or terms. (Compl. ¶ 17.) Dennis's sworn declaration, attached to the filed complaint, says "Hwang received $115,000 in salary for 2024 and $115,000 in 2025, for a total of $230,000 in salary in 2 years." (D.E. 1-1, "Dennis Dec.," ¶ 23.)

[2] The complaint says, "[o]n or about July 1, 2025, Martin's services with HST as Chairman were terminated" (Compl. ¶ 19) and "Martin acted as Chairman until July 1, 2025, when he was relieved of that position and associated duties" (*id.* ¶ 126). However, Dennis's declaration indicates, "[o]n or about the same time that HST ceased paying Hwang a salary, Martin's services with HST as Chairman were terminated at his request." (Dennis Dec. ¶ 26.) The Declaration aligns with the complaint in identifying the date of Hwang's salary termination as "on or about December 15, 2025." (*Id.* ¶ 24.)

38.) On January 12, Hwang emailed GDS and Dennis, stating, "[p]lease tell [Dennis] it's hopeless. It's time to concede[;] the more he struggles conditions will worsen. This plan wasn't hatched the other evening. This has been carefully planned for the past 8 months." (*Id.* ¶ 39.)

Hwang and Martin also took steps to replace Dennis with Hwang as HST's point of contact for vendor services, lock Dennis out of company-related accounts and systems, and remove Dennis's name from the company's website. (*Id.* ¶ 42.) Additionally, Hwang and Martin formed a company named HST Advisory Group Corporation, which used HST Holdings' established logo and company information, and rerouted web traffic from the existing HST Holdings website to one associated with HST Advisory Group. (*Id.*) Since taking control of HST Holdings, Hwang and Martin have refused to pay its employees. (*Id.* ¶ 45.) Dennis has blocked HST Holdings' receivables as of January 16. (*Id.* ¶ 43.)

On January 13, through counsel, Dennis and HST Holdings demanded that Hwang and Martin "take immediate action to address the harm caused to Dennis." (*Id.* ¶ 46.) Dennis believed that further efforts would be fruitless and futile in light of Hwang's statement that the takeover had been planned for eight months. (*Id.*)

## III. Procedural History

Dennis filed this lawsuit shortly afterwards, on February 5, 2026. (*See* Compl.) After he made two unsuccessful motions for emergency injunctive relief—the first to prevent defendants broadly from doing business as HST (D.E. 4) and the second to enjoin them from convening any special, annual, or other meetings of HST Holdings (D.E. 23)—defendants filed this motion to dismiss on April 27, 2026. (D.E. 39.)

## IV. Motion to Dismiss

Defendants move for dismissal under three distinct theories.

First, they argue that the Court should dismiss all claims brought in HST Holdings' name because Dennis lacked the member approval that, in defendants' view, the operating agreement requires to authorize the action. (D.E. 39-1, "Mot. to Dismiss Br.," at 11–12.) Defendants further contend that the company's claims must be pursued derivatively and that dismissal is warranted because the complaint neither pleads a derivative action nor adequately alleges a demand on the other members or grounds excusing demand, as required by Rule 23.1 and Delaware law. (*Id.* at 13–15.) Defendants add that this Court does not have subject matter jurisdiction because, absent a contrary agreement, Delaware law requires derivative claims to proceed in the Delaware Court of Chancery. (*Id.* at 12–13.)

Second, defendants move for dismissal of the entire complaint under Rule 12(b)(7) for failure to join necessary parties. (*Id.* at 15.) They contend that a memorandum of understanding (*see* D.E. 39-2, "Hwang Dec.," Ex. 1, "MOU") that Dennis and Hwang executed in 2021 identifies two additional members of HST who are missing from the complaint: Ryan Mitchell, with a 15% ownership interest, and Joseph Durham, with a 10% ownership interest. (Mot. to Dismiss Br. at 15.) Defendants insist that Mitchell and Durham are indispensable parties and their absence requires dismissal. (*Id.* at 15–16.)

Third and finally, defendants attack several specific counts under Rule 12(b)(6) for failure to state a claim. Defendants construe Count Nine, which seeks judicial dissolution under New Jersey law, to target HST Advisory Group Corporation, which Hwang created in Delaware. (*Id.* at 16.) They argue that this Court has no power under New Jersey law to dissolve a Delaware company that is not a party and with which plaintiffs have no affiliation. (*Id.*) Defendants also argue that the Court should dismiss all counts against Martin because the

complaint does not allege particularized facts against him; this argument targets all counts except Eight, Nine, and Fourteen. (*Id.* at 17.) As to Count Eight (unjust enrichment), defendants argue that the complaint pleads no benefit beyond Martin's assumption of the CEO position and fails to allege either an expectation of remuneration or how his retention of the asserted benefit without payment would be unjust. (*Id.* at 18.) As to Count Fourteen (tortious interference), defendants argue that the complaint fails to establish a business relationship that Dennis enjoyed with which Martin interfered, or how Martin could interfere with the business relationships of a company of which he was a member. (*Id.* at 19–20.)

In sum, then, defendants move to dismiss (1) all claims to the extent that HST Holdings is the plaintiff, pursuant to either the operating agreement's requirement for authorization, violation of Rule 23.1's derivative-action and demand-pleading requirements, or Rule 12(b)(1) for lack of subject matter jurisdiction; (2) the entire complaint pursuant to Rule 12(b)(7) for failure to join necessary and indispensable parties; (3) Count Nine with prejudice pursuant to Rule 12(b)(6); and (4) all claims as against Martin pursuant to Rule 12(b)(6).

## V. Jurisdiction

This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Counts One, Two, Ten, Eleven, Fifteen, and Sixteen arise under federal law. The Court has supplemental jurisdiction over the complaint's state-law claims pursuant to 28 U.S.C. § 1367(a) because they share a common nucleus of operative fact—i.e., defendants' alleged actions to oust Dennis from HST Holdings and appropriate the company's business—with the federal claims. *See Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

## VI. Legal Standards

Each of defendants' theories for dismissal requires a unique standard of review, which the Court discusses here before evaluating the motion in the following section.

**A. Motion to Dismiss Pursuant to Rule 12(b)(1) for Lack of Subject Matter Jurisdiction**

A district court's first task when considering a motion under Rule 12(b)(1) is to determine whether the "motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). A facial attack argues that a claim is on its face "insufficient to invoke the subject matter jurisdiction of the court because" a "jurisdictional defect is present." *Id.* at 358. A facial attack "does not dispute the facts alleged in the complaint." *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 458 (D.N.J. 2020) (Cox Arleo, J.) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). When considering a facial attack, the Court views the complaint and attached documents "in the light most favorable to the plaintiff," just as it would when considering a 12(b)(6) motion to dismiss. *Aichele*, 757 F.3d at 358 (quoting *Schering Plough*, 678 F.3d at 243).

By contrast, a factual attack argues that "the facts of the case . . . do not support the asserted jurisdiction." *Id.* A defendant mounting such an attack "contests the truth of the jurisdictional allegations." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018). A factual attack allows the court to "look beyond the pleadings to ascertain the facts" such as, for example, when a complaint adequately pleads diversity, but the defendant submits supplemental proof that diversity in fact fails. *Aichele*, 757 F.3d at 358. Thus, while a facial attack contests the sufficiency of the pleadings, "a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id.* (quoting *CNA v. United*

*States*, 535 F.3d 132, 139 (3d Cir. 2008)). "The defendant has the initial burden of production to raise a factual challenge." *GBForefront, L.P. v. Forefront Mgmt. Grp., LLC*, 888 F.3d 29, 35 (3d Cir. 2018). "When a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must demand less in the way of jurisdictional proof than would be appropriate at the trial stage." *Red Hawk Fire*, 449 F. Supp. 3d at 458 (quoting *Davis*, 824 F.3d at 350).

### B. Motion to Dismiss Pursuant to Rule 12(b)(7) for Failure to Join Necessary Parties

Rule 12(b)(7) provides that defendants may assert by motion the defense of "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). Under Rule 19, a party that is necessary to the action must be joined if feasible, but if joinder of a particular party "is not feasible because it would destroy" subject matter jurisdiction and "the party is 'indispensable,' under Rule 19(b)," the case must be dismissed. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404–05 (3d Cir. 1993). "Dismissal under Rule 12(b)(7) is warranted when the absent party is both necessary under Rule 19(a) and indispensable under Rule 19(b)." *Earle Refin., LLC v. New Vacuum Techs., LLC*, 2024 WL 2749723, at *3 (D.N.J. May 29, 2024) (Kirsch, J.) (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007)).

According to Rule 19(a)(1),

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

If analysis under Rule 19(a)(1) establishes that an absent party is necessary, and if joining that party is not feasible (because, e.g., joinder would destroy diversity, the court cannot obtain

personal jurisdiction, or the party is immune from suit), Rule 19(b) then guides the analysis of that party's indispensability:

> If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

According to the Third Circuit, Rule 19 requires a three-step inquiry: (1) should the absent party be joined as per Rule 19(a)(1)(A) and (a)(1)(B); (2) if so, is joinder feasible, which is to say "can the party be joined without depriving the court of the ability to hear the case?"; and (3) if joinder is not feasible, "should the action continue in the party's absence or be dismissed?" *Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC*, 80 F.4th 223, 232 (3d Cir. 2023) (citing *Gen. Refractories*, 500 F.3d at 312). If an absent party is not "necessary" under Rule 19(a), the inquiry need not reach the remaining questions. *Gen. Refractories*, 500 F.3d at 312–13.

In reviewing a Rule 12(b)(7) motion to dismiss, the court must accept all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party. *Jurimex Kommerz Transit G.M.B.H. v. Case Corp.*, 65 F. App'x 803, 805 (3d Cir. 2003). The court may, however, consider evidence outside of the pleadings. *M&B IP Analysts, LLC v. Cortica-US, Inc.*, 2020 WL 3411027, at *2 (D.N.J. June 22, 2020) (Salas, J.). The burden is on the movant to prove that a non-party is both necessary and indispensable. *Develcom Funding, LLC v. Am. Atl. Co.*, 2009 WL 2923064, at *2 (D.N.J. Sept. 9, 2009) (Bumb, J.).

### C. Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State a Claim Upon Which Relief May be Granted

To state a claim for relief, a complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief" so long as the statement provides "the defendant fair notice of what the claim is and the grounds upon which it rests." *Grink v. Virtua Health, Inc.*, 812 F. Supp. 3d 434, 445 (D.N.J. 2025) (O'Hearn, J.) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To provide grounds for entitlement to relief, "a complaint must contain sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Najjar v. Salameh*, 787 F. Supp. 3d 8, 12–13 (D.N.J. 2025) (O'Hearn, J.) (quoting *Twombly*, 550 U.S. at 547). "A facially plausible claim 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 13 (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)).

When evaluating a motion under Rule 12(b)(6), "a court must accept the complaint's well-pleaded allegations and all reasonable inferences drawn from them as true and view them in the light most favorable to the plaintiff." *Grink*, 812 F. Supp. 3d at 445 (citing *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). A court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Twombly*, 550 U.S. at 555–57). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

"In evaluating a motion to dismiss, [the Court] may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal citations omitted).

## VII. Discussion

### A. Motion to Dismiss Claims Brought by HST Holdings, LLC

Defendants first argue that claims brought by HST Holdings cannot survive because Dennis lacked the proper authorization to cause HST Holdings to file suit. Defendants add that absent such authority, Dennis was required to proceed derivatively, which compels dismissal either because this Court lacks subject matter jurisdiction under Delaware law or, in the alternative, because Dennis neither made a demand on the HST Holdings board pursuant to Rule 23.1 nor pled demand futility with particularity.

Because the first part of this argument claims that the complaint fails to state a claim in HST Holdings' name, the Court construes it as proceeding under Rule 12(b)(6) and accepts as true the allegations that Dennis holds a 51% ownership interest in HST (Compl. ¶ 1) and that the operating agreement attached to the complaint (*see* D.E. 1-2, "Operating Agreement") controls the entity's governance (Compl. ¶ 15). The Court concludes that the operating agreement authorizes Dennis to initiate suit on behalf of HST Holdings. Dennis therefore need not plead derivatively (with or without demand on the board). Defendants' motion to dismiss the claims brought in HST Holdings' name is therefore denied.

It is a "basic principle of corporate governance that the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 530 (1984) (citing *Hawes v. City of Oakland*, 104 U.S. 450, 453 (1881)). A derivative suit is "a limited exception to the usual rule that the proper party to bring a claim on behalf of a corporation is the corporation itself, acting through its directors or the majority of its shareholders." *Id.* at 531–32 (citing *Hawes*, 104 U.S. at 460–61). By its terms, Rule 23.1 only "applies when one or more shareholders or members of a corporation or an unincorporated association" file suit on the

entity's behalf "to enforce a right that the corporation or association may properly assert but has failed to enforce." Fed. R. Civ. P. 23.1; *Daily Income Fund*, 464 U.S. at 533–34 ("the conceptual basis and purposes of Rule 23.1 confirm what its language suggests: the Rule governs only suits 'to enforce a right of a corporation' when the corporation itself has 'failed to enforce a right which may properly be asserted by it' in court."). Rule 23.1 plays no role when an entity properly asserts its rights.

The operative question, therefore, as to the propriety of a corporate plaintiff is what law or instrument provided the corporate actor with authority to cause the entity to file suit. Here at the pleading stage, Dennis has adequately proffered two sources of that authority. The first is HST Holdings' operating agreement. That document requires (with certain exceptions) that "all activities . . . must be approved by the Members, to constitute the act of the Company or serve to bind the Company" and defines the approval necessary "to approve or carry out an action" as "the vote of the Members holding at least a majority of the Voting Interest of the Company." (Operating Agreement §§ 4.1(B), 6.1.) Dennis holds a 51% interest in HST Holdings and has filed a verified complaint. Dennis's interest satisfies the conditions on the face of the operating agreement that would authorize Dennis to cause HST Holdings to bring suit.

Delaware's statutory default rules also undermine defendants' contention that Dennis had no authority to cause HST Holdings to sue absent derivative procedures. If the operating agreement is not binding, as defendants contend, and no other agreement controls, the Court applies New Jersey choice-of-law principles to determine what state's default rules apply to internal governance. *See Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 333 (D.N.J. 2005) (Greenaway, J.) (citing *Sys. Operations, Inc. v. Sci. Games Dev. Corp.*, 555 F.2d 1131, 1136 (3d Cir. 1977) (holding that a federal court applies the forum state's conflicts principles

when asserting supplemental jurisdiction over state-law claims); *Rohm & Haas Co. v. Adco Chem. Co.*, 689 F.2d 424, 429 (3d Cir. 1982) (same)), *aff'd* 691 F.3d 527 (3d Cir. 2012). New Jersey resolves conflicts in LLC internal governance by applying the law of the formation state. *See* N.J.S.A. 42:2C-57a (providing that the formation state's law governs a foreign LLC's internal affairs); *see also Fagin v. Gilmartin*, 432 F.3d 276, 282 (3d Cir. 2005) (citing *Brotherton v. Celotex Corp.*, 202 N.J. Super. 148, 154 n.1 (Law Div. 1985)) ("Under New Jersey's choice-of-law rules, the law of the state of incorporation governs internal corporate affairs."). The Delaware Limited Liability Company Act provides: "Unless otherwise provided in a limited liability company agreement, the management of a limited liability company shall be vested in its members in proportion to the then current percentage or other interest of members in the profits of the limited liability company owned by all of the members, the decision of members owning more than 50 percent of the said percentage or other interest in the profits controlling." 6 Del. C. § 18-402. Here, the Court accepts as true that Dennis holds a 51% membership interest in HST Holdings and draws the reasonable inference that Dennis holds a corresponding majority interest in profits, which means Dennis possesses controlling management authority under the default rule. Accordingly, the alleged invalidity of the proffered operating agreement does not, by itself at the pleading stage, establish that Dennis lacked authority to commence this action in HST Holdings' name.

Because Dennis has adequately pled authority to cause HST Holdings to sue, the Court denies this portion of the motion to dismiss without reaching defendants' arguments regarding derivative pleading.

**B. Motion to Dismiss for Failure to Join a Necessary Party**

Defendants next argue that the Court must dismiss this action because the complaint fails to join as defendants two individuals named in the MOU that Dennis and Hwang executed.

To determine if a party is necessary under Rule 19(a)(1)(A), a court asks only if it "can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial." *Gen. Refractories*, 500 F.3d at 313 (citing *Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d 701, 705 (3d Cir. 1996) ("Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder is sought.")). This portion of the Rule "stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court." Fed. R. Civ. P. 19 advisory committee's note to 1966 amendment; *Gen. Refractories*, 500 F.3d at 315. Where potential liability is joint and several among multiple parties, for example, complete relief may be granted with respect to any of them. *Janney Montgomery Scott*, 11 F.3d at 406. By contrast, absent contractual co-obligees may be required parties when proceeding without them would leave the defendant obligor exposed to additional claims seeking recovery on the same obligation. *See Dickson v. Murphy*, 202 F. App'x 578, 580–83 (3d Cir. 2006) (holding absent co-obligees necessary and affirming dismissal where their absence left the obligor exposed to additional claims); *Janney Montgomery Scott*, 11 F.3d at 408 (distinguishing an absent co-obligor from an absent co-obligee whose separate action could expose the obligor to double liability).

At the fore of the inquiry under Rule 19(a)(1)(B), which treats as necessary a party that "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may" prejudice the absent party's ability to protect the interest or expose an existing party to multiple liabilities, is whether absent parties "own[] rights under

disputed contracts," which means that such parties "generally have a legally protected interest" under Rule 19. *Epsilon Energy*, 80 F.4th at 233.

Here, defendants have not carried their burden to establish that Mitchell and Durham are necessary parties under Rule 19. First, the Court may grant complete relief to plaintiffs because each of the complaint's sixteen counts seeks either damages for the specific actions of Hwang and/or Martin or equitable relief of enjoining the named defendants.

The lone potential exception may be Count Nine, which seeks judicial dissolution of HST Holdings. In the event that Mitchell and Durham are members of HST Holdings, their non-joinder may prejudice their ability to protect that interest. But (as discussed *infra*) the Court dismisses Count Nine and, in any case, defendants have not adequately shown that Mitchell and Durham have a legally protected interest in HST Holdings. Defendants attempt to establish that interest by positing that (1) the operating agreement is a nullity because Hwang did not sign it and (2) the MOU for an entity called HST Group Inc., signed by Dennis and Hwang as CEO and President of that entity, respectively (*see* MOU at 1), establishes that Martin, Mitchell, and Durham are members of HST Holdings. These positions are unavailing.

First, the omission of Hwang's signature or a line for him to sign is immaterial as to the agreement's efficacy in governing the internal management of HST. *See* 6 Del. C. § 18-101(9) ("'Limited liability company agreement' means any agreement (whether referred to as a limited liability company agreement, operating agreement or otherwise), written, oral or implied, of the member or members as to the affairs of a limited liability company and the conduct of its business. A member or manager of a limited liability company or an assignee of a limited liability company is bound by the limited liability company agreement whether or not the

member or manager or assignee executes the limited liability company agreement. A limited liability company . . . is not required to execute its limited liability company agreement.”).

Second, the complaint alleges that HST Holdings is a Delaware limited liability company that Dennis formed on October 14, 2021. (Compl. ¶¶ 1–2, 13.) The MOU is dated July 6, 2021, more than three months earlier. (MOU at 1.) The MOU also identifies itself in its header and signature blocks as applying to an entity called HST Group Inc., not HST Holdings, LLC. (*Id.*) Hwang says he formed HST Group Inc. in Ohio on August 3, 2015. (Hwang Dec., Ex. 6 ¶ 9.)[3] To whatever degree the MOU establishes ownership interests for absent parties, therefore, those interests are in HST Group Inc. and not the entity at the center of this case, HST Holdings, LLC. Nothing in the record at this stage of the case establishes a legally protectable interest for Mitchell and Durham in HST Holdings.

Because defendants have not carried their burden to show that absentee parties are necessary under Rule 19(a), the Court need not inquire whether Mitchell and Durham are indispensable. Defendants’ motion to dismiss pursuant to Rule 12(b)(7) is denied.

### C. Motion to Dismiss for Failure to State a Claim

Under Rule 12(b)(6), defendants attack Count Nine and all claims that seek relief from Martin. The Court grants this motion only as to Count Nine.

#### a. Judicial Dissolution (Count Nine)

Much confusion exists in the briefing and among the parties regarding Count Nine.

The complaint expressly seeks “Judicial Dissolution of the Company pursuant to N.J.S.A. 42:2C-48.” (Compl. at 16.) The referenced statute is New Jersey’s Revised Uniform Limited

[3] Hwang adds that “[a]n entity by the name of ‘HST Group, LLC’ was formed on March 24, 2020 as a limited liability company in Delaware.” (Hwang Dec., Ex. 6 ¶ 11.) That entity appears nowhere else in the present record.

Liability Company Act ("RULLCA"). The complaint defines "Company" to refer to HST Holdings, LLC. (*Id.* ¶ 1.) On its face, then, Count Nine requests the equitable relief under RULLCA of judicial dissolution of HST Holdings.

But defendants' brief in support of their motion characterizes Count Nine as seeking judicial dissolution of "HST Advisory Group Corporation" (the entity that Hwang and Martin formed in Delaware well after the organization of HST Holdings (*see* Hwang Dec., Ex. 6 ¶ 62)) "pursuant to the New Jersey Business Corporation Act" (Mot. to Dismiss Br. at 16), which is N.J.S.A. 14A:1-1 *et seq.*, and not N.J.S.A. 42:2C-48. Defendants therefore doubly misconstrue Count Nine. And in opposing, it appears that plaintiffs have adopted defendants' mischaracterizations, suggesting that the complaint is "seeking judicial dissolution of HST Advisory Group Corporation" pursuant to "the New Jersey Business Corporation Act." (D.E. 45, "Opp. Br.," at 20.)

In the face of such confusion, the Court will read Count Nine to mean what it says: plaintiffs seek judicial dissolution of HST Holdings pursuant to N.J.S.A. 42:2C-48, a provision of RULLCA. This count is dismissed without prejudice because RULLCA does not reach foreign LLCs. According to the statute, "'Limited liability company' except in the phrase 'foreign limited liability company,' means an entity formed under this act." N.J.S.A. 42:2C-2. In turn, "'Foreign limited liability company' means an unincorporated entity formed under the law of a jurisdiction other than this State and denominated by that law as a limited liability company." *Id.* HST Holdings, which was formed in Delaware, is a foreign limited liability company. The dissolution provision expressly contemplates only "[a] limited liability company" and has nothing to say about foreign limited liability companies. N.J.S.A. 42:2C-48a.

If plaintiffs invoke the New Jersey Business Corporation Act to seek dissolution of HST Advisory Group, the same defect exists. That statute empowers a court to "enter a judgment dissolving the corporation" under certain conditions but defines "Corporation" as an entity formed under New Jersey law. N.J.S.A. 14A:12-7, 14A:1-2.1(g). HST Advisory Group is distinctly a "Foreign corporation" because it is "organized under the laws of a jurisdiction other than this State." N.J.S.A. 14A:1-2.1(i). The statute does not provide for judicial dissolution of a foreign corporation. Thus, even if the Court accepts the position advanced in the moving papers rather than the complaint, Count Nine must be dismissed.

**b. The Specificity of Claims as to Martin**

Defendants next argue that the Court should dismiss Martin because many counts "have failed to allege particularized facts" against him. (Mot. to Dismiss Br. at 17.)[4] According to them, most allegations against Martin are insufficiently pled because they either do not mention him by name, "contain mere summary/conclusory allegations with no factual support," or generally group Martin alongside other defendants without "adequate, specific facts as [to] Martin's own conduct." (*Id.*)

The complaint seeks relief from Martin in Counts One through Four, Eight, and Ten through Sixteen. (Compl. ¶¶ 48–139.) Defendants reserve Counts Eight and Fourteen for separate attacks (considered *infra*) and do not include them in this line of reasoning. (Mot. to Dismiss Br. at 16.) Defendants also target Counts Five through Seven (*id.*), but those counts allege claims against Hwang only (Compl. ¶¶ 79–93) and are therefore inapposite to this portion of the motion. In sum, then, the counts properly under attack here are One through Four, Ten through Thirteen, Fifteen, and Sixteen.

---

[4] The defense brings this motion on behalf of both Hwang and Martin (*see* D.E. 39, Notice of Motion) but moves to dismiss specific claims only as to Martin and not Hwang.

Under usual civil pleading standards, there is no merit to defendants' position. First, Counts One, Three, and Ten refer to "Defendants," a term which captures Martin, whom the case's caption designates as a defendant. Moreover, Counts Two, Four, Eleven, Twelve, Thirteen, Fifteen, and Sixteen expressly name Martin. The face of the complaint therefore adequately puts Martin on notice of the allegations pled against him. In most cases, that is sufficient for the count to survive dismissal. Defendants rely on one stray citation to *Ashcroft v. Iqbal* (Mot. to Dismiss Br. at 17), but that case stands for the proposition that a complaint cannot survive a motion to dismiss when built on mere recitals of causes of action with conclusory statements as to a defendant's liability. 556 U.S. at 678–79. It does not require that the complaint allege specific facts as to each defendant's specific conduct. Particularity as to the specific actions of each defendant may be ferreted out in discovery.

This complaint narrates a detailed scheme planned and executed by at least Hwang and Martin, supplying enough facts to make each cause of action alleged against Martin plausible on its face. Each count begins by incorporating all the allegations contained in the complaint's narrative portion and then alleges that those facts satisfy the elements specific to the particular cause of action. Under a liberal pleading standard, that is sufficient.

In demanding greater particularity in plaintiffs' pleading, however, defendants implicitly ask the Court to apply Rule 9(b)'s heightened pleading standard for fraud to each of the claims alleged against Martin. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). To satisfy Rule 9(b)'s pleading requirements, "plaintiffs may plead the specific conduct alleged to be fraudulent along with the 'date, place and time' that the alleged fraud occurred or use some 'alternative means of

injecting precision and some measure of substantiation into their allegations of fraud.'" *Poling v. K. Hovnanian Enters.*, 99 F. Supp. 2d 502, 508 (D.N.J. 2000) (Hochberg, J.) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985)). "When multiple defendants are involved, the complaint must plead with particularity by specifying the allegations of fraud applying to each defendant." *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) (citation omitted). "[C]ollectivized allegations that generally allege fraud as against multiple defendants, without informing each defendant as to the specific fraudulent acts he or she is alleged to have committed, do not satisfy Rule 9(b)." *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 607 (D.N.J. 2014) (Martini, J.) (citation omitted).

Still, "courts have relaxed the rule when factual information is peculiarly within the defendant's knowledge or control." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (collecting cases). "Courts," for example, "must be sensitive to the fact that application of Rule 9(b) prior to discovery 'may permit sophisticated defrauders to successfully conceal the details of their fraud.'" *Id.* (quoting *Christidis v. First Pa. Mortg. Tr.*, 717 F.2d 96, 99–100 (3d Cir. 1983)). To enjoy this relaxed application of Rule 9(b), "a complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity." *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992), *cert. denied*, 506 U.S. 934 (1992).

Here, a heightened pleading standard applies to at least Count Fifteen because RICO claims that rest on predicate acts of mail or wire fraud must satisfy Rule 9(b). *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004), *cert. denied*, 543 U.S. 918 (2004). That requirement

includes identifying "who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* at 224.

Count Fifteen satisfies Rule 9(b) because the pleading is sufficiently particular about the alleged fraudulent activity. The complaint attaches and quotes from two emails that plaintiffs allege defendants fraudulently sent from Dennis's email address "to various key vendors, employees, partners and clients"; the exhibits supply the specific date and time at which the allegedly fraudulent emails were sent as well as the specific recipients. (Compl. ¶¶ 37–38; D.E. 1-7 (Ex. 6); D.E. 1-8 (Ex. 7).) The complaint elsewhere names Martin as a participant in the fraud. (Compl. ¶¶ 42(a), 109–11.) Indeed, the complaint's narrative says expressly "Hwang and Martin impersonated Dennis using his email at HST and his impersonating him [*sic*] with PPNC [*sic*] Bank and United Airlines," which corresponds to the allegation in Count Fifteen that defendants committed fraud "using fraudulent pretenses and representation" by, among other actions, "assuming Dennis's identity and informing customers, vendors, clients and employees that he was stepping down for [*sic*] the company and that it would be operated by Hwang and Martin." (*Id.* ¶¶ 110, 134.) In sum, the complaint does not make a conclusory allegation of fraud by calling Martin a fraudster; plaintiffs instead allege that he actively participated in obtaining access to HST's systems, impersonating Dennis, and implementing the takeover.

To the extent that the complaint does not delineate the specific, individual acts of Martin and Hwang, the Rule 9(b) framework may be relaxed at this pre-discovery juncture of the litigation. Facts that may be pertinent, such as who exactly composed and sent the allegedly fraudulent emails or who hatched the plan, are peculiarly within defendants' knowledge and control. Moreover, the complaint's narration of Dennis's efforts through GDS, Microsoft Data Protection, and Microsoft Security to determine why he could not access his email and

eventually to retrieve emails sent from his address (Compl. ¶¶ 32–41) adequately describes what he did to obtain more specific information. It is sufficient at this point in the litigation that the complaint alleges that Martin worked in concert with Hwang to execute the adequately described alleged fraud.

The complaint sufficiently particularizes Martin's alleged participation in the scheme of fraudulent impersonation to satisfy Rule 9(b) as to Count Fifteen and any other counts grounded in the same activity. Defendants' motion to dismiss Counts One through Four, Ten through Thirteen, Fifteen, and Sixteen as insufficiently pled against Martin is denied.

**c. Count Eight: Unjust Enrichment as to Martin**

Defendants next attack the sufficiency of Count Eight's pleading of unjust enrichment against Martin. Plaintiffs allege that Martin improperly gained the benefit of the CEO position of HST Holdings, the retention of which would be unjust. (Compl. ¶¶ 95–96.)

New Jersey's choice-of-law rules govern the complaint's state-law claims. *Rohm*, 689 F.2d at 429; *Zavala*, 393 F. Supp. 2d at 333. New Jersey applies the law of the state of formation to the internal affairs of an LLC. N.J.S.A. 42:2C-57a; *see also Fagin*, 432 F.3d at 282. Because appointment as CEO is an internal corporate affair, HST Holdings' Delaware formation dictates use of that state's law.

Delaware law defines unjust enrichment as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quotation omitted). "The elements of unjust enrichment are: '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.'" *Windsor I, LLC v.*

*CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 875 (Del. 2020) (quoting *Nemec*, 991 A.2d at 1130).[5]

Here, plaintiffs' theory of enrichment is that "Martin has gained and enjoyed the position of [interim] CEO." (Compl. ¶ 95.) Crediting the complaint as true for the purposes of the present motion means that Martin's assumption of that position was in January 2026, after having been terminated as HST Chairman in either July or December 2025. Although the complaint does not allege a specific value, it is plausible that the position of interim CEO was salaried or otherwise compensated, which satisfies plaintiffs' burden to plead an enrichment. The complaint further alleges that Martin assumed the interim CEO role during and as a component of the scheme that ousted Dennis from the company, thereby pleading an impoverishment as well as a relation between the enrichment and impoverishment. (*Id.* ¶¶ 37–42.) Because the complaint also alleges that Martin gained the interim CEO role as part of an illicit conspiracy to remove HST Holdings' majority shareholder, plaintiffs sufficiently plead the final necessary element, the absence of justification for Martin's enrichment.

Count Eight therefore sufficiently pleads the elements of unjust enrichment under Delaware law and survives defendants' motion to dismiss.

#### d. Count Fourteen: Tortious Interference

Finally, defendants seek dismissal of the complaint's allegation of tortious interference against Martin. Defendants argue that the complaint does not identify any relationship between Dennis and another party that could constitute loss, and that Martin (who defendants posit is a

[5] The Court need not consider the fifth element because "[t]he absence of an adequate remedy at law is required only if an unjust enrichment claim is brought in the Court of Chancery and there is no other independent basis for equitable jurisdiction." *State ex rel. Jennings v. Monsanto Co.*, 299 A.3d 372, 391 (Del. 2023) (citation omitted).

member of HST Holdings) could not logically interfere with his own business relationships. Defendants add that the inconsistency between the complaint and Dennis's declaration as to the date of Martin's dismissal (*compare* Compl. ¶¶ 19, 126 (placing the dismissal in July 2025) *with* Dennis Dec. ¶¶ 24–26 (placing the dismissal in December 2025)) "undermines the credibility of this claim and further calls into question the extent to which Martin could have tortiously interfered with any relationship." (Mot. to Dismiss Br. at 20.)

Because tortious interference is an independent tort theory of liability, the internal corporate affairs doctrine does not apply, and the Court must undertake a choice of law inquiry under New Jersey's framework. That analysis requires two steps. First, the Court must "determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies." *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 717 (D.N.J. 2011) (Martini, J.) (citing *P.V. v. Camp Jaycee*, 197 N.J. 132, 142–43 (2008)). An "actual conflict" exists if the difference between the jurisdictions' laws would "have a significant effect on the outcome of the trial." *Complaint of Bankers Tr. Co.*, 752 F.2d 874, 882 (3d Cir. 1984). If an actual conflict exists, the Court moves to step two, determining which jurisdiction has the "most significant relationship" to the claim by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action." *Snyder*, 792 F. Supp. 2d at 717 (alteration in original) (quotation omitted). When analyzing tort claims, the Court may consider: (i) the location of the injury; (ii) the location of the conduct causing the injury; (iii) the "domicile, residence, nationality, place of incorporation, and place of business of the parties"; and (iv) the location "where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2).

Conceivably, the laws of Delaware (as the place of HST's formation) (Compl. ¶ 13), Illinois (as Hwang's place of residence) (*id.* ¶ 3), and New Jersey (as the place of residence for Dennis and Martin, and, seemingly, HST's principal place of business) (*id.* ¶¶ 1–2, 4, 11, 18, 22) could apply. Whether an actual conflict between these laws exists or not, New Jersey law applies. If no conflict exists, the Court applies the law of its New Jersey forum. And if the laws are in conflict, New Jersey has the most significant relationship to the claim, at least as to Martin. Dennis and Martin both reside in New Jersey, the state in which they conducted business for HST. Dennis's alleged injury was experienced in New Jersey, and any conduct Martin undertook to inflict that injury would likely have happened in New Jersey. The relationship between Dennis, Martin, and HST, then, is centered in New Jersey.

Count Fourteen makes several distinct claims. It alleges tortious interference "with HST's and Dennis's [1] prospective business opportunities, [2] prospective economic advantage, and [3] contractual relations." (*Id.* ¶ 128.)

Under New Jersey law, the elements of tortious interference with a prospective business opportunity and with prospective economic advantage are identical. *See, e.g., Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 305 (2001) (defining a claim for tortious interference with "economic advantage" as "[a]n action for tortious interference with a prospective business relation"). To state a claim, a complaint must plead that: (1) plaintiffs had some reasonable expectation of economic advantage of which they were in pursuit; (2) the defendants' actions were malicious in the sense that the harm was inflicted intentionally and without justification or excuse; (3) the interference caused the loss of the prospective gain; and (4) the injury caused the plaintiff damage. *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751–52 (1989) (citations omitted). It is "'fundamental' to a cause of action for tortious interference with a

prospective economic relationship that the claim be directed against defendants who are not parties to the relationship." *Id.* at 752.

The tort of interference with an existing (rather than prospective) business relation or contract "contains four elements: (1) a protected interest; (2) malice—that is, defendant's intentional interference without justification; (3) a reasonable likelihood that the interference caused the loss of the prospective gain; and (4) resulting damages." *Vosough v. Kierce*, 437 N.J. Super. 218, 234 (App. Div. 2014) (citations omitted), *certif. denied*, 221 N.J. 218 (2015).

The complaint sufficiently pleads all aspects of Count Fourteen as to both plaintiffs.

According to the complaint, Dennis's majority ownership, ongoing management of HST, and development of its customer relationships support a reasonable expectation of economic advantage in his pursuit of HST's growth. (Compl. ¶¶ 1, 13, 20–25, 129.) Martin allegedly conspired maliciously and unjustifiably with Hwang to oust him through unauthorized access to company systems and communications falsely announcing that Dennis had relinquished his authority. (*Id.* ¶¶ 3–4, 35–39, 42, 91.) Defendants allegedly excluded Dennis from HST's operations, installed Martin as CEO, and caused Dennis damages. (*Id.* ¶¶ 37–42, 47, 95, 128–31.) These facts sufficiently plead the elements of tortious interference with prospective business opportunity and economic advantage.

The complaint sufficiently pleads the same claims as to HST. The alleged customer relationships, growing revenues, and accumulated goodwill support a reasonable expectation of continued and future business. (*Id.* ¶¶ 20–25, 66–67, 129.) Martin allegedly participated in a scheme to divert those operations to HST Advisory Group by transferring vendor relationships, altering company account information, using HST's name and logo, and redirecting traffic from HST Holdings' website to the competing company's website. (*Id.* ¶ 42.) The complaint alleges

commercial injury and loss of goodwill, as well as exposure to liability arising from defendants' failure to pay HST's employees. (*Id.* ¶¶ 42, 47, 50–56, 128–31.)

Defendants' claim that Martin cannot interfere with HST's contracts because he is a member of the LLC is unavailing: the complaint pleads both that only Dennis and Hwang were members of HST (*id.* ¶ 13; Operating Agreement at 14) and that Martin was terminated from the company prior to the alleged interference (Compl. ¶¶ 19, 126; Dennis Dec. ¶ 26).

The complaint also sufficiently pleads tortious interference with contractual relations as to both Dennis and HST Holdings. As to Dennis, the complaint alleges that Martin conspired with Hwang to circumvent the operating agreement and oust Dennis from HST, including by participating in the unauthorized takeover and assuming the CEO position, thereby depriving Dennis of the benefits of his agreement with Hwang. (Compl. ¶¶ 3–4, 15, 37–42, 80–83, 91–95, 128–31; Dennis Dec. ¶¶ 56–58.) The complaint also alleges conduct supporting an inference that HST Holdings had existing contracts with several utility companies that Hwang and Martin conspired to divert away from HST Holdings to HST Advisory Group. (Compl. ¶¶ 20–22, 37–38, 42, 128–31.)

Defendants' motion to dismiss Count Fourteen is denied.

## VIII. Conclusion

For the foregoing reasons, the motion to dismiss is denied as to all counts except Count Nine, which is dismissed without prejudice. An appropriate order will follow.

/s/ Katharine S. Hayden
Date: November 17, 2026 Katharine S. Hayden, U.S.D.J.